UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **CPC Logistics, Inc.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **Abbott Laboratories, Inc.** | ) Case No.: 13-228 |
| | ) |
| **Serve: Registered Agent** | ) **JURY TRIAL DEMANDED** |
| **The Corporation Company** | ) |
| **120 S. Central Ave.** | ) |
| **Clayton, MO 63105** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

COMES NOW Plaintiff, CPC Logistics Inc. and for its cause of action against Defendant Abbott Laboratories, Inc., states the following:

## STATEMENT OF THE CASE

1. This is a breach of contract action based on diversity jurisdiction in which Plaintiff is seeking reimbursement from Defendant for multiemployer pension plan contributions in the form of withdrawal liability payments made by Plaintiff and its predecessor to the Central States, Southeast and Southwest Areas Pension Fund ("Central States Pension Fund") on behalf of certain truck driver employees of CPC and its predecessor that were provided to Defendant to perform services at various Defendant's facilities pursuant to the terms of an Agreement originally entered into between Plaintiffs' predecessor entity, TLI, Incorporated (TLI) and Defendant.

**JURISDICTION AND VENUE**

2. Plaintiff CPC Logistics, Inc. (CPC) is a corporation incorporated and organized under the laws of Missouri, with its principal place of business in St. Louis County, Missouri.

3. Defendant is a corporation incorporated under the laws of the state of Delaware with its principal place of business in Abbott Park, Illinois, and is registered to do business and does substantial business in the State of Missouri, with its Registered Office and Registered Agent located in St. Louis County, Missouri.

4. This Court has jurisdiction of this action by virtue of 28 U.S.C. § 1332(a) in that the suit involves a controversy between citizens of different states and the amount in controversy, without interest and costs, exceeds $75,000.00.

5. Venue is proper in this Court by virtue of 28 U.S.C. §§ 1391(a) and 1391(c) and per this Court's Local Rule 3-2.07(B)(1) and (4), in that Defendant is deemed to reside in this judicial district and division, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and division.

**FACTUAL BACKGROUND**

6. On or about February 1, 1992, Plaintiff's predecessor, TLI, Incorporated and Defendant entered into a contract (the "Agreement"), which is attached hereto as Exhibit A and incorporated herein, under which TLI agreed to provide Defendant with duly licensed drivers to drive vehicles owned or leased by Defendant.

7. In connection with and included as part of the Agreement, the parties entered into separate Schedules "A" and Addendums with respect to various Defendant locations where TLI provided drivers to Defendant. The initial Schedule "A," dated February 1, 1992 ("1992 Schedule A") is attached hereto as Exhibit B-1. A subsequent Schedule "A" dated April 14,

2002 ("2002 Schedule A") covering all of Defendants' locations, into which all of the existing Schedules "A" were merged, is attached hereto as Exhibit B-2.

8.  On or about February 21, 1997, the Agreement was assigned, with Defendant's consent and concurrence, from TLI to TLI's parent corporation Consolidated Personnel Corp. so as to permit any of Consolidated Personnel Corp.'s subsidiary entities, including TLI, to provide driver services to Defendant under the same Agreement. The Assignment is attached hereto as Exhibit C and made a part hereof.

9.  On or about December 31, 1998 TLI merged into Consolidated Personnel Corp., and on December 31, 2002 Consolidated Personnel Corp. changed its corporate name to CPC Logistics Inc. (CPC). (All references hereafter to "CPC" shall refer to and include TLI, Incorporated, Consolidated Personnel Corp. and CPC Logistics Inc.)

10.  Pursuant to the Agreement, and specifically Paragraphs A and C of the 2002 Schedule A, (Exhibit B-2), Defendant agreed to pay CPC for certain costs and payments CPC made to or on behalf of its employee drivers assigned to service Defendant, which costs and payments specifically include, "the amount of wages, fringe benefits and other payments required to be made":

   1) "pursuant to any collective bargaining agreement"; or

   2) "pursuant to any statute or governmental regulation"; and

   3) "including, but not limited to, all payments made to, for the benefit of or in any manner relating to the personnel supplied under the Agreement"; and

   4) "holiday and vacation pay and health, welfare and pension fund contributions applicable to or required with respect to the employees provided hereunder, together with

any other employee benefits paid for, in behalf of or in any other manner relating to such employees as a result of or in any manner relating to a union agreement obligation."

11.    The parties' course of dealing at all times relevant hereto consisted of CPC directly paying the wages, benefits, and other payments required to be made to or for the benefit of its employee drivers assigned to service Defendant; CPC invoicing Defendant for these costs and payments; and Defendant reimbursing and paying CPC for such amounts.

12.    At all times relevant herein, certain of the CPC employees assigned to service Defendant were covered by collective bargaining agreements with various Teamsters Local Unions that required CPC to make specified pension contributions into the Central States, Southeast and Southwest Areas Pension Fund ("Central States Pension Fund"), a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

13.    CPC made all weekly pension contributions required by the collective bargaining agreements into the Central States Pension Fund for its driver employees assigned to service Defendant, invoiced Defendant for these pension contributions, and Defendant reimbursed CPC for all such pension contributions.

14.    On or about December 1, 2009, CPC permanently ceased to have an obligation to contribute to the Central States Pension Fund in respect of any collective bargaining agreement or in respect of any employee, thereby effecting a "complete withdrawal" from the Central States Pension Fund, as provided in Section 4203(a) of ERISA, 29 U.S.C. §1383(a).

15.    As a result of its complete withdrawal from the Central States Pension Fund, CPC and the other members of CPC's controlled group of companies were assessed withdrawal liability, on a joint and several liability basis, pursuant to Section 4201(b) of ERISA, 29 U.S.C.

4

§1381(b), in the principal amount of $9,770,183.71, and indexed by the Central States Pension Fund as assessment number 1774549-WL100069-01 (the "2009 Withdrawal Liability").

16. On or about April 22, 2010, CPC received a notice and demand for payment of the 2009 Withdrawal Liability from the Central States Pension Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

17. After discussions between CPC and the Central States Pension Fund, on or about October 19, 2010, CPC and its controlled group members received a revised letter of notification stating that the Central States Pension Fund had adjusted the amount of the 2009 Withdrawal Liability to $9,746,204.23 (the "Adjusted 2009 Withdrawal Liability").

18. Per Section 4201(b) of ERISA, 29 U.S.C. §1381(b), the total amount of the Adjusted 2009 Withdrawal Liability was based on, and bore a direct relationship to the total amount of all weekly pension contributions made by CPC to the Central States Pension Fund on behalf of CPC employees assigned to service its various customers during the years 1999 to 2008.

19. More specifically, the total of all pension contributions made by CPC to the Central States Pension Fund during the years 1999 to 2008 was $4,157,875.30, and the total of all pension contributions made by CPC to the Central States Pension Fund during the years 1999 to 2008 on behalf of those CPC employees only assigned to service Defendant per the Agreement, was $1,355,676.33.

20. The principal amount of the Adjusted 2009 Withdrawal Liability that is directly attributable to and specifically based on the pension contributions CPC was required to make and did make to the Central States Pension Fund on behalf of the driver employees assigned to

5

service Defendant per the Agreement is $3,177,752.44 (hereafter the "Abbott Withdrawal Liability").

22. From May 2010 through March 2011, CPC made monthly "interim" withdrawal liability payments (including additional "billing charges" assessed by Central States) to the Central States Pension Fund, as required by applicable law. CPC paid a total of $521,083.86 in interim withdrawal liability payments that were directly attributable to and specifically on account of the Abbott Withdrawal Liability.

22. On or about September 28, 2010, CPC began invoicing Defendant for the amount of "interim" withdrawal liability payments CPC made that were directly attributable to and on account of the Abbott Withdrawal Liability, but none of such invoices have been paid.

23. On or about March 18, 2011, CPC entered into a settlement agreement with the Central States Pension Fund to fully settle and resolve the Adjusted 2009 Withdrawal Liability, which specifically included the remaining balance of the Abbott Withdrawal Liability.

24. Per that settlement agreement CPC paid the Central States Pension Fund $2,403,165.70 as full and final payment on the remaining balance of the Abbott Withdrawal Liability.

25. CPC made the payment described in Paragraph 24 to the Central States Pension Plan on or about March 23, 2011.

26. CPC has paid a total of $2,924,249.56 ($521,083.86 in "interim" payments and $2,403,165.70 in a lump sum payment) to the Central States Pension Fund for the Abbott Withdrawal Liability

27. On April 12, 2011, CPC submitted a final invoice to Defendant in the amount of $2,924,249.56, constituting the total amount paid by CPC to the Central States Pension Fund that is directly attributable to and on account of the Abbott Withdrawal Liability.

28. Defendant has failed and refused to pay any of CPC's demands or invoices for reimbursement of the amount of the Abbott Withdrawal Liability incurred and paid by CPC and for which Defendant is obligated to pay CPC under the Agreement.

## **BREACH OF CONTRACT**

Plaintiff CPC, for its cause of action against Defendant for breach of contract, states and alleges as follows:

29. CPC incorporates by reference each and every allegation listed in paragraphs 1 through 28 above as though the same were completely set forth herein.

30. The Agreement, including the 2002 Schedule A, constitutes a valid and enforceable contract between CPC and Defendant.

31. The terms of the Agreement and the Schedules "A" require Defendant to reimburse CPC for the payments CPC has incurred and paid the Central States Pension Fund for and on direct account of the Abbott Withdrawal Liability.

32. CPC has demanded reimbursement from Defendant for the aforementioned payments it has made for the Abbott Withdrawal Liability.

33. Defendant has failed and refused to reimburse CPC for any of the Abbott Withdrawal Liability payments incurred and paid by CPC.

34. Defendant's failure and refusal to reimburse CPC for the Abbott Withdrawal Liability payments constitutes a breach of contract.

35. CPC has suffered damages as a direct result of Defendant's breach of contract in the amount of $2,924,249.56, plus pre-judgment interest.

WHEREFORE, Plaintiff, CPC, requests judgment against Defendant in the amount of $2,924,249.56, or such other amount as the Court shall determine is just and proper, together with prejudgment interest thereon calculated at the highest legal rate from the due date of each unpaid invoice. The total amount of principal plus accrued interest through January 31, 2013 amounts to $3,408,793.71, plus all costs and reasonable attorney's fees incurred by Plaintiff in bringing this action, and for such other relief as the Court deems just and proper.

Respectfully submitted,

HARRIS DOWELL FISHER & HARRIS, L.C.

By:/s/ Michael F. Harris
    Michael F. Harris, #33505MO
    George L. Lenard, #35793MO
    15400 South Outer Forty, Suite 202
    Chesterfield, MO 63017
    (636) 532-0300
    (636) 532-0246 – Facsimile
    mharris@harrisdowell.com

By: /s/ Daniel H. LeGear
    Daniel H. LeGear, #20072MO
    10805 Sunset Office Dr., Suite 200
    St. Louis, MO  63127
    (314) 821-1770
    (314) 821-7309 – Facsimile
    d.legear@callcpc.com

Attorneys for Plaintiff, CPC Logistics, Inc.