UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CPC LOGISTICS, INC., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff(s), | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:13CV228 JCH |
|  | ) |  |
| ABBOTT LABORATORIES, INC., | ) |  |
|  | ) |  |
| Defendant(s). | ) |  |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Abbott Laboratories, Inc.'s Motion to Transfer Venue, filed May 23, 2013. (ECF No. 16). The motion is fully briefed and ready for disposition.

**BACKGROUND**

On or about February 1, 1992, Plaintiff's predecessor, TLI, Incorporated ("TLI"), entered into an Agreement with Defendant Abbott Laboratories, Inc. ("Abbott"). (Complaint ("Compl."), ¶ 6). Pursuant to the terms of the Agreement, TLI agreed to provide Abbott with the services of duly licensed truck drivers, and in return, Abbott agreed to pay TLI for such services in accordance with the specific payment schedules attached to and incorporated by reference into the Agreement. (Id., ¶ 7).

On or about February 21, 1997, the Agreement was assigned, with Abbott's consent, from TLI to TLI's parent corporation, Consolidated Personnel Corp. (Compl., ¶ 8). On or about December 31, 1998, TLI merged into Consolidated Personnel Corp., and on December 31, 2002, Consolidated Personnel Corp. changed its corporate name to CPC Logistics, Inc. ("CPC"). (Id., ¶ 9).

Pursuant to the Agreement and the 2002 Schedule A incorporated therein, Abbott agreed to

pay CPC for services rendered, in relevant part as follows:

> A.) The amount of wages, fringe benefits and other payment required to be made by [Abbott] under the Agreement, or pursuant to any collective bargaining agreement, statute or governmental regulation, including, but not limited to, all payments made to, for the benefit of or in any manner relating to the personnel supplied under the Agreement....
>
> C.) [Abbott] also agrees to reimburse [CPC] holiday and vacation pay and health, welfare and pension fund contributions applicable to or required with respect to the employees provided hereunder, together with any other employee benefits paid for, in behalf of or in any other manner relating to such employees as a result of or in any manner relating to a union agreement obligation.

(Compl., ¶ 10, and att. Exh. B-2).

During the period of time that CPC provided services to Abbott under the Agreement, certain of CPC's employees assigned to Abbott's operations were covered by collective bargaining agreements with various Teamsters Local Unions. (Compl., ¶ 12). Pursuant to those collective bargaining agreements, CPC was required to make specified pension contributions into the Central States, Southeast and Southwest Areas Pension Fund ("Central States Pension Fund"), a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3), for those employees. (Id.). CPC made all weekly pension contributions required by the collective bargaining agreements into the Central States Pension Fund for its driver employees assigned to service Abbott, invoiced Abbott for those pension contributions, and Abbott reimbursed CPC for all such pension contributions. (Id., ¶ 13).

On or about December 1, 2009, CPC's obligation to contribute to the Central States Pension Fund in respect of any collective bargaining agreement permanently ceased, thereby effecting a "complete withdrawal" from the Fund, as defined in Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). (Compl., ¶ 14). As a result of this complete withdrawal, CPC and members of its controlled group

of companies were assessed withdrawal liability pursuant to Section 4201(b) of ERISA, 29 U.S.C. § 1381(b), in the principal amount of $9,770,183.71. (Id., ¶ 15). CPC received a notice and demand for payment of the 2009 withdrawal liability from the Central States Pension Fund on or about April 22, 2010. (Id., ¶ 16).[1] According to CPC, per section 4201(b) of ERISA, 29 U.S.C. § 1381(b), the total amount of the adjusted 2009 withdrawal liability was based on, and bore a direct relationship to, the total amount of all weekly pension contributions made by CPC to the Central States Pension Fund on behalf of CPC employees assigned to service its various customers during the years 1999 to 2008. (Id., ¶ 18).

From May, 2010, through March, 2011, CPC made monthly interim withdrawal liability payments to the Central States Pension Fund. (Compl., ¶ 21).[2] On or about March 18, 2011, CPC entered into a settlement agreement with the Central States Pension Fund, which required CPC to make a lump sum payment to the fund. (Id., ¶¶ 23, 24). CPC made the required payment on or about March 23, 2011. (Id., ¶ 25).

According to Plaintiff, CPC has paid a total of $2,924,249.56 in withdrawal liability to the Central States Pension Fund that is directly attributable to pension contributions made on behalf of the employees CPC provided to Abbott pursuant to the Agreement.[3] (Compl., ¶ 26). CPC alleges that on April 12, 2011, it submitted a final invoice to Abbott in the amount of $2,924,249.56, which

---

[1] On or about October 19, 2010, CPC and its controlled group members received a revised letter of notification, assessing an adjusted 2009 withdrawal liability in the amount of $9,746,204.23. (Compl., ¶ 17).

[2] According to CPC, on or about September 28, 2010, CPC began invoicing Abbott for the amount of interim withdrawal liability payments it paid that CPC claims were directly attributable to pension contributions made on behalf of employees provided to Abbott's union locations. (Compl., ¶ 22).

[3] This amount consisted of $521,083.86 in "interim" payments, and $2,403.165.70 in a lump sum payment. (Compl., ¶ 26).

Abbott has failed and refused to pay. (Id., ¶¶ 27, 28).

CPC filed its Complaint in this matter on February 4, 2013. (ECF No. 1). In its Complaint, CPC alleges Abbott breached the terms of the Agreement and payment schedule thereto, by refusing to reimburse CPC for the amount of withdrawal liability incurred by CPC that was directly attributable to pension contributions made on behalf of employees CPC provided to Abbott pursuant to the Agreement. (Compl., ¶¶ 31, 33, 34).

As stated above, Abbott filed the instant Motion to Transfer Venue on May 23, 2013. (ECF No. 16). In its motion, Abbott requests that this action be transferred to the United States District Court for the Northern District of Illinois. (Id.).

## DISCUSSION

28 U.S.C. §1404(a) governs the ability of a federal district court to transfer a case to another venue. That provision provides in relevant part as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[4] *Id.* "In considering a §1404(a) motion, the Court must give great weight to the plaintiff's choice of a proper venue. That choice should only be disturbed upon a clear showing that the balance of interests weighs in favor of the movant's choice of venue." *Anheuser-Busch, Inc. v. City Merchandise*, 176 F.Supp.2d 951, 959 (E.D. Mo. 2001) (citations omitted). The Court should consider these factors when evaluating a motion to transfer: "1) the convenience of the parties; 2) the convenience of non-party witnesses; 3) the availability of judicial process to compel testimony from hostile witnesses; 4) the governing law; 5) relative ease of access to sources of proof; 6) possibility of delay and prejudice if a transfer is granted; and 7)

---

[4] CPC does not dispute that this action could have been brought in the Northern District of Illinois.

- 4 -

practical considerations of cost and efficiency." *Id.* (citation omitted); *see also Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The convenience of the witnesses, however, is the "primary, if not most important" factor. *Anheuser-Busch, Inc.*, 176 F.Supp.2d at 959 (citing *May Dept. Stores Co. v. Wilansky*, 900 F.Supp. 1154, 1165 (E.D. Mo. 1995)). Furthermore, "unless the balance of interests is strongly in favor of the movant, the plaintiff's choice of forum should prevail." *Id.* (citation omitted).

Upon consideration, the Court finds the balance of factors taken into account under § 1404(a) favors denying Abbott's Motion to Transfer.

### A. *Convenience of the Parties*

The first consideration when analyzing a motion to transfer under § 1404(a) is the convenience of the parties. In this case, the Court notes that while Abbott is an Illinois corporation, presumably with its relevant records, documents and other evidence located in its home district, CPC's corporate headquarters are in Chesterfield, Missouri, with much of its documentary evidence and many of its witnesses located in the Eastern District of Missouri. Transferring the case to the Northern District of Illinois thus would merely shift the inconvenience from Abbott to CPC, and so this factor weighs against granting Abbott's Motion to Transfer Venue. *See Caddy Products, Inc. v. American Seating Co.*, 2005 WL 2401910, at *2 (D. Minn. Sept. 28, 2005) (citations omitted) ("Thus, when the plaintiff resides in the chosen forum and the defendant resides in the proposed transferee forum, one party will unavoidably be inconvenienced whether or not the transfer is granted. In such a case, the plaintiff's choice of forum will prevail.").

### B. *Convenience of Witnesses*

As noted above, the convenience of witnesses has been called "the most powerful factor governing the decision to transfer a case." 17 James Wm. Moore, et al., *Moore's Federal Practice*

§ 111.13[1][f][i] (3rd ed. 2010). "The convenience of the witnesses is determined by reference to their residence in relation to the district in which the action is pending and the proposed transferee district." *Id.* The sheer number of witnesses is not determinative, however. Rather, the party seeking transfer must specifically identify the material witnesses, and indicate the nature of their testimony at trial. *Id.*; *see also American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 262 (W.D. Mo. 1980); *Nordyne, Inc. v. Flick Distributing, LLC*, 2009 WL 1508778, at *6 (E.D. Mo. 2009).

The parties strongly disagree as to which forum is more convenient for the relevant witnesses. Typically, however, "'it is the burden of the party seeking transfer to specify clearly the key witnesses to be called and indicate what their testimony will entail.'" *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F.Supp.2d 1032, 1046 (E.D. Mo. 2004) (quoting *Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 928 (W.D. Mo. 1985)). Although Abbott maintains the vast majority of non-party witnesses reside in Illinois, it specifically identifies only one such potential witness, Frank Merlock – a former Abbott employee who is now employed by AbbVie Inc., an Abbott spinoff.[5] Abbott provides neither the identities of the potentially "staggering" number of other non-party witnesses located in Illinois, nor statements indicating the anticipated testimony from such witnesses. *See American Standard, Inc.*, 487 F.Supp. at 262 (citations omitted) ("if the party moving for transfer under §1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied.").[6]

---

[5] CPC disputes whether Merlock himself is an important witness in this matter.

[6] Even after CPC pointed out in its Memorandum in Opposition to Abbott's Motion to Transfer Venue that Abbott had failed to specify key witnesses, their locations, and the general nature of their expected testimony, Abbott persisted in its failure to name any individuals other than Frank

In addition, the Court does not share Abbott's concern with respect to the Central States Pension Fund at this time. This case is about a breach of contract between CPC and Abbott, and while testimony from Central States Pension Fund witnesses may be relevant to establish CPC's damages, if any, Abbott has not shown that "such witnesses cannot be compelled to appear for discovery, in a proper place… [or] that the testimony of any necessary witness cannot be adequately presented by deposition, either read into the record from a transcript, or in the form of a videotaped deposition played for a jury." *Maritz Inc. v. C/Base, Inc.*, 2007 WL 6893019, at*12 (E.D. Mo. Feb. 7, 2007) (citations omitted).

For these reasons, the Court finds that the balance of the convenience of the witnesses does not weigh in favor of transfer, as transfer would merely shift the inconvenience from Abbott to CPC. *See Terra Int'l*, 119 F.3d at 696-97 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)) ("Merely shifting the inconvenience from one side to the other… obviously is not a permissible justification for a change of venue.").

### C. Other Factors

Finally, the Court's review of the record demonstrates the remaining factors weigh in favor of maintaining jurisdiction of this action in this Court as well.[7] As noted above, because the parties are headquartered in different jurisdictions, neither party convincingly asserts that access to sources of proof or the location of documents demands litigating in its preferred forum. Further, with regard to the governing law, this Court is fully capable of applying the applicable laws in this case. *Buckeye Int'l, Inc. v. Unisource Worldwide, Inc.*, 2005 WL 2406026, at *3 (E.D. Mo. Sept. 28, 2005). In

---

Merlock in its reply brief.

[7] Abbott offers no evidence regarding the existence of hostile witnesses, and so the Court will not address its ability to compel testimony from such witnesses in this order.

other words, even assuming Abbott is correct in its assertion that litigation involving the Central States Pension Fund occurs almost exclusively in the Northern District of Illinois, that does not mean (a) that this Court is incapable of interpreting and applying precedent from another jurisdiction developed in other litigation, or (b) that litigation involving the Fund should occur only in the Northern District of Illinois and the Seventh Circuit.

With respect to the possibility of delay if the transfer is granted, the Court finds a high likelihood that resolution of this matter would be delayed by a transfer. Finally, as for judicial economy, the Court agrees with CPC that Abbott fails sufficiently to explain why joinder of the Central States Pension Fund as a party may be necessary, and further offers no authority to support its contention that the Fund could not be joined in this district if necessary.

It is important to remember that CPC chose to bring this lawsuit in the Eastern District of Missouri, in close proximity to its principal place of business. As noted above, courts give great deference to a plaintiff's choice of forum, and a party requesting transfer under §1404(a) bears the burden of demonstrating that the transfer is justified. *Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc.*, 244 F.Supp.2d 1015, 1022 (E.D. Mo. 2002). Based on the foregoing, the Court concludes Abbott has failed to meet its burden under §1404(a) of establishing that transfer is warranted, and so its Motion to Transfer Venue must be denied. *See Buckeye Int'l*, 2005 WL 2406026, at *2 (Section 1404(a) allows transfer to a more convenient forum, but not to a forum equally convenient or inconvenient).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED that** Abbott Laboratories, Inc.'s Motion to Transfer Venue (ECF No. 16) is **DENIED**.

Dated this 12th day of August, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE